**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chartis Property Casualty Co., | No. CV-11-2067-PHX-SMM |
| Plaintiff, | |
| vs. | **MEMORANDUM OF DECISION AND ORDER** |
| Robert Alpert, et al., | |
| Defendants, | |
| And Related Counterclaims. | |

In this insurance coverage dispute, Plaintiff Chartis Property Casualty Co. ("Chartis") alleges that Defendants Robert and Hillary Alpert ("the Alperts") are not entitled to coverage under two insurance policies that Chartis issued to the Alperts. Chartis initiated this declaratory judgment action asking that the Court resolve the coverage dispute. (Doc. 1.) In response, the Alperts counterclaimed, alleging breach of contract and insurance bad faith, and requesting attorney's fees and other damages. (Doc. 12.) Pending before the Court is Chartis' motion for summary judgment and the Alperts' cross-motion for partial summary judgment. (Docs. 36, 45.) The matters are fully briefed–the parties having responded, replied and filed supporting and controverting statement of facts. (Docs. 37, 45, 46, 58, 59, 60, 69.) Also pending is Chartis' motion to strike the declaration of an undisclosed witness

(Doc. 61), which is also fully briefed.[1] (Docs. 68, 70.) As set forth below, the Court will grant Chartis' motion for summary judgment and deny the Alperts' motion for partial summary judgment. The Court will deny Chartis' motion to strike the declaration of an undisclosed witness.

## BACKGROUND

The Alperts are the insureds on a homeowner's policy (Doc. 37-2 at 2-46) and a personal excess liability policy (Doc. 37-3 at 2-31) (referred to as the "Policies"). In 2008-09, Defendant Robert Alpert worked as a consultant for Eye Level Holdings, LLC ("ELH") f/k/a Cylon through his company Danro Corporation. (Doc. 37-6 at 2-3; Docs. 35, 64.) ELH provides (among other things) premium text messaging services for wireless phones. (Doc. 37-4 at 7.) ELH assigned Alpert to work with other companies related to ELH's business, including Verizon Wireless. (Doc. 64.)

After Alpert had ceased his consulting work for ELH, Verizon Wireless sued ELH based, in part, on allegedly disparaging statements about ELH made by Alpert to Verizon Wireless and others. See Cellco Partnership d/b/a Verizon Wireless v. Jason Hope, et al., No. CV 11-432-PHX-DGC.[2] In the Cellco case, Alpert was deposed and questioned about information he provided to Verizon about ELH, and his deposition transcript was treated as confidential. In this case, the Court granted Defendants' motion to seal Alpert's deposition due to the presence of confidential business information. (Doc. 64.)[3] The parties in the

---

[1] Both parties have requested oral argument. The Court will not set oral argument on the parties' cross-motions because both parties have submitted legal memoranda and oral argument would not aid the Court's decisional process. See e.g., Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998).

[2] Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986).

[3] In both Chartis' motion for summary judgment and the Alperts' motion for partial summary judgment, references to Robert Alpert's deposition testimony necessarily reveals the cited facts as a matter of course.

1 Cellco litigation settled their dispute. (Cellco, No. CV 11-432-PHX-DGC, Doc. 294.)

2 Subsequently, on March 30, 2011, ELH sued the Alperts, two other individuals, and 3 two companies owned by Robert Alpert. (Doc. 37-4; Doc. 46 at 3.) On April 7, 2011, the 4 Alperts tendered the ELH lawsuit to Chartis and requested that Chartis defend and indemnify 5 them. (Doc. 46-2 at 2.) Chartis then began their investigation regarding whether the Alperts 6 were entitled to coverage under the policies. (Doc. 46-30.) The Alperts also tendered the 7 ELH Complaint to their business insurance carrier based on policies that were issued to the 8 two companies owned by the Alperts that were named in the lawsuit, Copia Mobile and AZ 9 Digital Farm. (Doc. 37-5 at 7-11.) On May 16, 2011, the Alperts settled the claims for all 10 defendants with ELH for $900,000, and subsequently requested that the insurers reimburse 11 the settlement amount the Alperts agreed to pay ELH. (Doc. 37-5 at 17-46.) The business 12 carrier settled and paid $300,000 to the Alperts. (Doc. 37-5 at 7-11.) Based on the 13 homeowners policies in effect, Chartis refused to defend or indemnify the Alperts. (Doc. 46-14 30.)

15 *The ELH Complaint/Alpert's Tender*

16 The underlying lawsuit against the Alperts, Eye Level Holdings, LLC d/b/a Jawa, 17 f/k/a Cylon v. Copia Mobile, LLC, AZ Digital Farm, LLC, Robert and Hillary Alpert, 18 Michael and Jane Doe Chadwick, Chris and Jane Doe Yeagy, Case No. CV-2011-051139, 19 Maricopa County Superior Court, was filed on March 30, 2011. (Doc. 37-4 at 2-25.) Two 20 of the defendants, AZ Digital Farm, LLC and Copia Mobile, LLC are Alpert's companies 21 either directly or indirectly through other companies he controls. (Doc. 46 at 3.) The ELH 22 Complaint asserted nine counts against the Alperts and others: (1) Tortious Interference with 23 Contract; (2) Breach of Contract: Breach of Confidentiality Provision; (3) Breach of 24 Contract: Non-Solicitation, Non-Interference, and Non-Disparagement Provisions; (4) 25 Breach of Contract: Non-Competition Provision; (5) Breach of Fiduciary Duty; (6) Inducing 26 Breach of Fiduciary Duty; (7) Common Law Misappropriation of Trade Secrets; (8) 27 Statutory Misappropriation of Trade Secrets; and (9) Conspiracy. (Doc. 46 at 3.) Of these,

28

only Counts 1, 2, 6, 7, 8, and 9 were claims aimed at the Alpert defendants; the remainder of the claims were asserted against others. (Doc. 46 at 3.)

The Complaint alleged that Alpert and the other defendants tortiously interfered with ELH's business and employment relationships and that a conspiracy existed among the defendants to compete unfairly with ELH. (Doc. 37-4.) The Complaint alleged that in September 2008, ELH began employing Defendant Robert Alpert as a consultant. (Doc. 37-4 at 8.) The Complaint alleged that Alpert signed a Confidentiality and Non-Disclosure Agreement when he began work. (Doc. 37-6 at 2-3.) This agreement allowed both parties to share confidential information in connection with possible business relationships. (Doc. 37-6 at 2-3.)

While consulting for ELH, the Complaint alleged that Alpert founded two companies that competed with ELH, Copia Mobile and AZ Digital Farm. (Doc. 37-4 at 8.) The Complaint alleged that per Alpert's recommendation, ELH hired Michael Chadwick as its Chief Operations Officer. (Doc. 37-4 at 8-9.) Shortly thereafter, Chadwick ended his employment relationship with ELH and allegedly began to work for Copia Mobile. (Doc. 37-4 at 11-13.) The Complaint alleged that both Alpert and Chadwick began to solicit employees from ELH. (Doc. 37-4 at 10-13.)

The Complaint alleged that ELH sent a cease and desist letter to Chadwick and Alpert regarding solicitation of ELH employees. (Doc. 37-4 at 13.) After receiving the letter, Alpert entered into a joint defense agreement with Chadwick which allowed them to share information. (Doc. 64.) During this information sharing process, Alpert testified that he first became aware of information–protected by attorney-client privilege–which indicated to him that ELH was engaged in consumer fraud. (Doc. 64.) Chadwick allegedly responded to the cease and desist letter through counsel with his own allegations in a 7-page letter about the manner in which ELH conducted its business, which is referred to in the Complaint as "Chadwick's Extortion Letter." (Doc. 37-4 at 13.)

The Complaint further alleged: "[ELH] later learned that Chadwick's vile attack on

1    its business practices was more than just fodder for his lawyer's letter, as it provided the
2    bases for false and disparaging allegations that Alpert made to Verizon Wireless and the
3    Texas Attorneys General, in an effort to derail, if not destroy, [ELH]'s business." (Doc. 37-4
4    at 13.)  The Complaint further alleged that in January/February 2011, "[h]aving gained
5    connections at Verizon Wireless while consulting for [ELH], Alpert, with [Michael]
6    Chadwick's help, provided Verizon Wireless and the Texas Attorney General with alleged
7    false information, resulting in Verizon and the Texas AG filing separate ill-founded lawsuits
8    against [ELH], on the same day, March 7, 2011." (Doc. 37-4 at 4.)  The Complaint further
9    alleged that Alpert was attempting to compete with ELH through Alpert's businesses by
10   hiring away ELH's employees and disseminating information harmful to ELH to third parties
11   in order to gain a competitive advantage. (Doc. 37-4 at 13-18, 22-25.)
12          Because the Complaint alleged that Alpert engaged in false and disparaging comments
13   about ELH to Verizon, Alpert tendered the matter to Chartis asking them for defense and
14   indemnification as the policies provide for defense of suits where the insured is being sued
15   for defamation, libel or slander. (See, e.g., Doc. 37-2 at 9-10.)

*Business Pursuits Exclusion*

17          The homeowner's policy and the excess policy issued by Chartis to the Alperts
18   provides for comprehensive personal liability coverage.  Chartis agreed to pay all sums
19   which the Alperts became legally obligated to pay as damages because of "personal injury
20   or property damage caused by an occurrence covered by the policy anywhere in the world,
21   unless stated otherwise or *an exclusion applies*." (Doc. 37-2 at 17, emphasis added.) Chartis
22   also agreed to defend any suit against the insured alleging such bodily injury or property
23   damage and seeking damages which are payable under the terms of the policies. (Doc. 37-2
24   at 17.) A claim for personal injury includes "defamation, libel or slander." (Doc. 37-2 at 9-
25   10.) However, the policies did not apply to any business pursuits of an insured. (Doc. 37-2
26   at 18-19; Doc. 37-3 at 17-18.)
27          In the homeowner's policy, the "business pursuits" exclusion issued by Chartis states

- 5 -

as follows:

**E. Exclusions**

This policy does not provide coverage for liability, defense costs or any other cost or expenses for:

. . .

**11.    Business Pursuits**

Personal injury or property damage arising out of an insured person's business property or business pursuits, investment activity or any activity intended to realize a profit for either an insured person or others. However, this exclusion does not apply to:

a. Volunteer work for an organized charitable, religious or community group;
b. Incidental business activity; or
c. Limited Residence Premises Business Liability Coverage.
The term "business" is defined to mean, "a part-time or full-time trade, occupation or profession, including farming or ranching, other than incidental business."

In the excess policy, the "business pursuits" exclusion issued by Chartis states as follows:

**A**. As respects Excess Liability, Limited Employment Practices Liability and Limited Charitable Board Directors and Trustees Liability:

This insurance does not provide coverage for liability defense cost or any other cost or expense:

. . .

**6. Business Pursuits**

Arising out of an insured person's business property or business pursuits, investment activity or any activity intended to realize a profit for either an insured person or others.
However, this exclusion does not apply to:

a. Volunteer work for an organized charitable, religious or community group;
b. Incidental business activity;
c. Limited Residence Premises Business Liability coverage; or;
d. Residences held for rentals which are listed on the Declarations page.
The term "business" is defined to mean, "a part-time or full-time trade, occupation or profession, including farming or ranching, other than incidental business."

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents,

1 viewed in the light most favorable to the nonmoving party, "show that there is no genuine
2 issue as to any material fact and that the moving party is entitled to judgment as a matter of
3 law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
4 Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Upon motion at
5 any time, a party defending against a claim may move for "partial summary judgment," that
6 is, "summary judgment in the party's favor as to . . . any part thereof." FED. R. CIV. P. 56(b).
7 Substantive law determines which facts are material.  See Anderson v. Liberty Lobby, 477
8 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130.  "Only disputes over facts that
9 might affect the outcome of the suit under the governing law will properly preclude the entry
10 of summary judgment." Anderson, 477 U.S. at 248.  The dispute must also be genuine, that
11 is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving
12 party."  Id.; see Jesinger, 24 F.3d at 1130.

13    A principal purpose of summary judgment is "to isolate and dispose of factually
14 unsupported claims."  Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate
15 against a party who "fails to make a showing sufficient to establish the existence of an
16 element essential to that party's case, and on which that party will bear the burden of proof
17 at trial."  Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.
18 1994).  The moving party need not disprove matters on which the opponent has the burden
19 of proof at trial.  See Celotex, 477 U.S. at 323-24.  The party opposing summary judgment
20 need not produce evidence "in a form that would be admissible at trial in order to avoid
21 summary judgment."  Id. at 324.  However, the nonmovant "may not rest upon the mere
22 allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing
23 that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); see Matsushita Elec. Indus. Co.,
24 Ltd. v.Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint
25 Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

26 ///
27 ///
28

**DISCUSSION**

**I. Chartis' Motion for Summary Judgment**

*Defamation Coverage*

Chartis argues that the ELH complaint's claim regarding the false and disparaging statements made by Robert Alpert against ELH did not constitute a claim for defamation and that therefore there was no coverage for personal injury under the policy provisions. (Doc. 36.) In light of the Court's ruling that the business pursuits exclusion in the policies defeats coverage, the Court declines to address this additional argument to defeat coverage. However, the Court notes that in Chartis' comprehensive coverage opinion provided to the Alperts, Chartis acknowledged that "the allegations in the Complaint . . . do create a potential for liability for the 'personal injury' offense of 'defamation, libel or slander.'" (See, e.g., Doc. 46-30 at 2.)

*Business Pursuits Exclusion*

Chartis argues that the business pursuits exclusion in both policies precludes coverage. Specifically, each policy bars coverage for: "Personal injury […] arising out of an insured person's business […] pursuits, investment activity or any activity intended to realize a profit for either an insured person or others." (Doc. 37-2 at 19.) In the ELH Complaint, ELH alleged that Alpert made false and disparaging statements about ELH to Verizon, the Texas Attorney General, and others. Chartis contends that these allegations arose out of Alpert's consulting services for ELH, which is a business activity excluded by the policy. (Doc. 36 at 9-10.) Chartis specifically states that these alleged false and disparaging statements were made to correct prior statements Alpert made while a consultant for ELH through his corporate entity, Danro Corporation. (Id.) Chartis contends that Alpert made these statements in order to 1) prevent claims (civil or criminal) from being made against him for alleged prior "misrepresentations" as an ELH consultant; and 2) tortiously compete with ELH through his co-defendant businesses, AZ Digital Farm and Copia Mobile. (Doc. 58 at 4.)

- 8 -

1  Alpert disagrees with the motives attributed to him by Chartis, and responds that he
2  reported the information regarding ELH's alleged wrongful activities as a matter of personal
3  conscience because it was the right thing to do. (Doc. 45 at 3.) With respect to Verizon,
4  Alpert indicated that it was incumbent upon him to correct statements he made while
5  consulting for ELH, based on information provided to him by ELH that he later discovered
6  was likely false. (Id.)

7  The Alperts further contend that the business pursuits exclusion is inapplicable
8  because such an exclusion requires a "continued or regular activity for the purpose of earning
9  a livelihood such as a trade, profession, or occupation, or a commercial activity" citing
10 Farmers Ins. Co. v. Wiechnick, 166 Ariz. 266, 268, 801 P.2d 501, 503 (App. 1990). (Doc.
11 45 at 10.) "[B]oth regularity and the profit motive must be present for an activity to
12 constitute a business pursuit" excluding coverage. Nationwide Mut. Fire Ins. Co. v. Jones,
13 695 F. Supp. 2d 978, 985 (D. Ariz. 2010) (finding that the business pursuits exception was
14 inapplicable where a homeowner, who worked for a bank, offered to hold a party at her home
15 where another bank employee was injured while riding the homeowner's all-terrain vehicle
16 and stating that the insured "was not engaging in a 'continued or regular activity'" and the
17 "profit motive is weak, if at all present."). (Doc. 45 at 10.) Because Alpert's statements were
18 made during a relatively short period of time in late January and February 2011, almost 18
19 months after Alpert ceased consulting for EHL, the Alperts argue that the business pursuits
20 exclusion does not apply. (Doc. 45 at 11.) Further, Alpert contends that making
21 whistleblower-type complaints regarding ELH's allegedly fraudulent enterprise was not a
22 regular activity that he engaged in for profit. (Id.) Because his statements were neither
23 regular or continued and had no profit motive, Alpert denies applicability of the business
24 pursuits exclusion. (Id.)

25 A federal court sitting in diversity applies state substantive law. See Hambleton Bros.
26 Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1227 (9th Cir. 2005). Thus, this
27 Court applies Arizona law to the interpretation of the insurance contracts at issue. See

Benevides v. Arizona Prop. & Cas. Ins. Guar. Fund, 184 Ariz. 610, 613, 911 P.2d 616, 619 (App. 1995). "[W]hile coverage clauses are interpreted broadly so as to afford maximum coverage to the insured, exclusionary clauses are interpreted narrowly against the insurer." Scottsdale Ins. Co. v. Van Nguyen, 158 Ariz. 476, 479, 763 P.2d 540, 543 (App. 1988). However, "[a]n insurance company has the right to limit its liability and to impose conditions and restrictions upon its contractual obligations not inconsistent with public policy." Kepner v. Western Fire Ins. Co., 109 Ariz. 329, 330, 509 P.2d 222, 223 (1973). It is the insurer who bears the burden of establishing the applicability of its policy exclusions. Keggi v. Northbrook Prop. & Cas. Ins. Co., 199 Ariz. 43, 46, 13 P.3d 785, 788 (App. 2000). Because business activities present additional risks over and above the ordinary hazards to be found in the operation and maintenance of a home, it is not against public policy to exclude this risk. Kepner, 109 Ariz. at 330, 509 P.2d at 223.[4]

The policies at issue here exclude "personal injury" arising out of business pursuits. In Fimbres v. Fireman's Fund Ins. Co., 147 Ariz. 75, 708 P.2d 756 (App. 1985), the Arizona Court of Appeals interpreted the words "arising out of" when construing a business pursuits exclusion clause in a homeowner's insurance policy. The Fimbres court stated:

> The term 'arising out of' implies a causal connection. The term is ordinarily understood to mean "originating from," "having its origin in," "growing out of" or "flowing from" or in short, "incident to or having connection with."

Id. at 77, 708 P.2d at 758 (further citation omitted). At issue in Fimbres was whether the insured's conduct "originated from, grew out of, flowed from and had a connection with his regularly conducted business" and therefore was excluded from insurance coverage. Id. The court ultimately found that the insured's acts did arise from his regularly conducted business.

In applying the definition of "arising out of" to the facts of this case, it is undisputed

---

[4] In Fimbres v. Fireman's Fund Ins. Co., 147 Ariz. 75, 77, 708 P.2d 756, 758 (App. 1985), the court noted that the exclusion of business liability in a homeowner's policy removes coverage which is not essential to the purchasers of the policy and normally requires specialized underwriting and rating, and thus helps keep premium rates at a reasonable level.

- 10 -

1  that Alpert entered into a consulting relationship on behalf of ELH. As part of his consulting
2  work, he was assigned projects that brought him into contact with Verizon and other entities
3  connected with the cellphone industry. Subsequent to Alpert's decision to cease consulting
4  for ELH, he came to the conviction that ELH had misled him and caused him to
5  communicate information to Verizon that was false. (Doc. 46 at 13; Doc. 64.) Alpert also
6  came to the conviction that ELH was involved in consumer fraud. (Doc. 64.) He
7  communicated his convictions to Verizon, as well as the other authorities. (Id.) It is clear
8  that the statements which formed the basis of the disparaging statements that Alpert made
9  about ELH to Verizon and the others originated from, grew out of, flowed from and had a
10 connection with the consulting activities he undertook for ELH. See Fimbres 147 Ariz. at
11 77, 708 P.2d at 758.

12 Alpert contends further that his whistleblowing activities were not regular and
13 continuous but rather only for a particular period of time, and therefore do not fall under the
14 business pursuits exclusion. (Doc. 45 at 11.)

15 The court in Fimbres considered a similar question, whether the insured's conduct was
16 regular and continuous or isolated. Fimbres 147 Ariz. at 76-77, 708 P.2d at 757-58. In
17 Fimbres, the insured was engaged in the business of selling herbs and giving nutritional
18 advice. Id. at 75, 708 P.2d at 756. The plaintiff, Ms. Fimbres, had a sore on her right leg
19 which was not healing and she consulted with the insured . Id. The insured prescribed some
20 herbs and how to mix and apply a poultice. Id. at 75-76, 708 P.2d at 756-77. Ms. Fimbres
21 applied the poultice but did not seek medical treatment. Id. at 76, 708 P.2d at 757. As a
22 result, her leg became gangrenous and was amputated. Id. She filed suit. Ms. Fimbres
23 argued that the business pursuits exclusion was inapplicable because the insured's "isolated,
24 unauthorized act in prescribing the herbs and poultice for [her] was not a customary
25 engagement, and therefore, he was not engaged in business when he did so." Id.

26 The court rejected the contention, finding that the definition of business pursuits was
27 broader, concluding that the policy excluded personal injury arising out of an insured's

- 11 -

1 business pursuits. Id. The court found that the insured's prescription of the herbs grew out
2 of and had a connection with his regularly conducted business and therefore his acts arose
3 out of his business pursuits. Id. at 77, 708 P.2d at 758.

4       Likewise in this case, Alpert's conduct, including all of his post-consultation
5 allegations of consumer fraud by ELH that were communicated to Verizon, the Federal Trade
6 Commission, AT&T, the FBI Cyber Crimes Division, the Maricopa County Sheriff's
7 Department and the Texas Attorney General's Office, arose out of and had a connection with
8 his regularly conducted business, his past consulting employment relationship with ELH.
9 (Doc. 46 at 13; Doc. 64.) Thus, as in Fimbres, Alpert's conduct falls under the exclusion.

10       The Arizona Court of Appeals made a similar finding in Industrial Indem. Co. v.
11 Goettl, 138 Ariz. 315, 674 P.2d 869 (App. 1983). In Goettl, Gust and Adam Goettl were
12 officers and sole stockholders in International Metal Products Company and partners in
13 Adgus Properties, which built a warehouse. 138 Ariz. 315, 317-18, 674 P.2d 869, 871-72
14 (App. 1983). Subsequently, Adgus sold the warehouse to McGraw-Edison Co. Id. Sixteen
15 years later, an employee of McGraw-Edison fell through the roof of the warehouse and
16 sustained permanent injuries. Id. The employee filed suit against Adgus Properties alleging
17 that the roof was negligently constructed and that the building had been sold without
18 disclosing the dangerous condition of the roof to McGraw-Edison. Id. A homeowner's
19 policy at issue in the case excluded coverage for bodily injury arising out of the business
20 pursuits of the insured. Id. at 318. The court found that the employee's claim was excluded
21 from coverage because it involved specific acts of the Goettls while they were engaged in
22 the operation and sale of their business enterprise, even though the injury occurred some
23 sixteen years later. Id. at 318-19, 674 P.2d at 872-73. Thus, the injury allegedly resulting
24 from these acts arose out of the insured's business pursuits.

25       The same rule applies to the insured in this case. Alpert's claim is excluded from
26 coverage because the conduct at issue arose from his regularly conducted employment
27 relationship with ELH, even though it occurred after his consulting employment relationship

28

1  with ELH had terminated.

2  As to Alpert's contention that his whistleblowing activities were not profit-related, 3 Alpert testified that he was attempting to correct alleged false representations he made to 4 Verizon, which he made as part of his consulting relationship for ELH. (Doc. 64.) Alpert 5 further testified that he received compensation from ELH for his consulting services. (Id.)

6  The Court finds that because the alleged disparaging statements were made for a 7 business purpose and for which Alpert received compensation, such statements/allegations 8 arose out of a "business pursuit, investment activity or any activity intended to realize a profit 9 for either an insured or others." See Goettl, 138 Ariz. at 318-19, 674 P.2d at 872-73.

10  Moreover, Alpert's deposition testimony and the ELH Complaint support that Alpert's 11 disparaging statements to the authorities occurred at the same time that he was starting 12 competing companies and soliciting and hiring former employees of ELH. (Doc. 64.) While 13 the Court need not determine whether Alpert tortiously competed with ELH through AZ 14 Digital Farm and Copia Mobile, the economic fallout resulting from Alpert's post-15 consultation conduct, combined with the subsequent lawsuits brought against ELH, shows 16 that Alpert's conduct did have a profit motive because Alpert sought a competitive advantage 17 against ELH.

18  On the basis of the foregoing, the Court finds that the policies at issue both contained 19 a business pursuits exclusion. The Court further finds that the insured's conduct falls within 20 the business pursuits exclusion. Therefore, Chartis was not obligated to defend or indemnify 21 Robert Alpert based on the lawsuit filed against him.

22  *Coverage for Hillary Alpert*

23  Chartis further contends that the business pursuits exclusion also applies to bar 24 coverage for Robert's spouse, Hillary Alpert. (Doc. 36 at 9.) The business pursuits 25 exclusion in each policy bars coverage for: "Personal injury […] arising out of an insured 26 person's business […] pursuits, investment activity or any activity intended to realize a profit 27 for either an insured person or others." Citing American Family Mut. Ins. Co. v. White, 204

- 13 -

1  Ariz. 500, 508, 65 P.3d 449, 507 (App. 2003), Chartis argues that the "or others" language
2  operates to exclude coverage for Robert's spouse, Hillary Alpert. (Id.)

3  The Court agrees. In White, the Arizona Court of Appeals found that the phrase "any
4  insured" in an exclusion bars coverage for any claim attributable to the acts of *any* insured
5  under the policy. Id. (emphasis added). Here, the Court found that the acts of Robert Alpert,
6  an insured under the policy, were not covered due to the business pursuits exclusion.
7  Because Robert Alpert's acts were excluded from coverage, his acts also preclude Hilary
8  Alpert from coverage as well.

9  *The Alperts' Response to Summary Judgment*

10  The Alperts contend that material issues of fact preclude this Court from granting
11  Chartis summary judgment. (Doc. 45 at 14.) Specifically, the Alperts cite their allegations
12  that Chartis handled their insurance claim in bad faith. (Id.; see also Doc. 12.)

13  "An insurance contract is not an ordinary commercial bargain; implicit in the contract
14  and the relationship is the insurer's obligation to play fairly with its insured." Zilisch v. State
15  Farm Mut. Auto. Ins. Co., 196 Ariz. 234, 237, 995 P.2d 276, 279 (2000) (further quotation
16  omitted). Although insurers do not owe fiduciary duties to their insureds, they do owe some
17  duties of a fiduciary nature including equal consideration, fairness and honesty. Id. The
18  insurer is obligated to conduct a prompt and adequate investigation, to act reasonably in
19  evaluating the insured's claim, and to promptly pay a legitimate claim. Id. at 238, 995 P.2d
20  at 280.

21  "An insurer acts in bad faith when it unreasonably investigates, evaluates, or processes
22  a claim (an "objective" test), and either knows it is acting unreasonably or acts with such
23  reckless disregard that such knowledge may be imputed to it (a "subjective" test)." Nardelli
24  v. Metro. Group Prop. & Cas. Ins. Co., 230 Ariz. 592, 597-98, 277 P.3d 789, 794-95 (App.
25  2012) (citing Zilisch, 196 Ariz. at 238, 995 P.2d at 280). The objective and subjective
26  elements of bad faith are applied to both the insurer's evaluation of the claim and the
27  insurer's claims handling process. Id.

28

- 14 -

An insurer "may challenge claims which are fairly debatable," but "its belief in fair debatability 'is a question of fact to be determined by the jury.'" Zilisch, 196 Ariz. at 280, 995 P.2d at 279 (citing Sparks v. Republic Nat'l Life Ins. Co., 132 Ariz. 529, 539, 647 P.2d 1127, 1137 (1982). However, if the insured offers no significantly probative evidence that calls into question the insurer's belief in fair debatability, the court may rule on the issue as matter of law. Knoell v. Metropolitan Life Ins. Co., 163 F. Supp.2d 1072, 1076 (D. Ariz. 2001). Thus, an insurance company can be liable for bad faith for either unreasonably denying a claim that was not fairly debatable or for acting unreasonably in how it processed a claim whether the claim was fairly debatable or not.

It is undisputed that the Alperts timely tendered the ELH Complaint to Chartis and asked Chartis to defend them. In support of their claim that Chartis acted in bad faith, the Alperts argue that 1) Chartis unreasonably refused to defend them; 2) Chartis unreasonably refused to defend them even under a reservation of rights; 3) Chartis acted in bad faith in excluding coverage based on the business pursuits exclusion in the policies; and 4) Chartis misused its power and engaged in unreasonable claims handling. (Doc. 45 at 17-18.)

Although the Alperts argue that Chartis denied coverage of their claim in bad faith, the Court disagrees. Rather, the Court finds that the Alperts have not offered any significantly probative evidence that calls into question the coverage position that Chartis took in this case or the manner in which Chartis handled the claim. Following the Alperts' tender of the ELH Complaint, Chartis from the outset disclaimed coverage because of the business pursuits exclusion based on its review of the factual basis of the claim. Under its coverage position, Chartis chose not to defend the Alperts, even under an agreement to reserve its rights to deny coverage under the policy. The Alperts disagreed with Chartis' coverage position and advised that they would provide additional evidence showing that the business pursuits exclusion was inapplicable. However, the additional evidence provided was Robert Alpert's deposition in Cellco, along with the deposition exhibits. (Doc. 46-30; 46-3.) As the Court has already thoroughly discussed, the Alpert deposition confirmed that

Alpert's disparaging statements about ELH to Verizon–which precipitated ELH filing the Complaint against the Alperts–arose from and were related to Alpert's prior consulting employment relationship with ELH. Robert Alpert's efforts to retract his prior statements to Verizon arose out of and had a connection with a business pursuit intended to realize a profit for either himself or others. Further, the statements were made in order to benefit Alpert's companies and to forward his scheme to unfairly compete with ELH. Therefore, the disparaging statements also had a connection with his companies, thus qualifying as a business pursuit intended to realize a profit for himself or others.

In support that Chartis unreasonably denied coverage, the Alperts submitted an expert affidavit who reurged that Alpert's disparaging statements about ELH to Verizon and others did not arise out of his consulting employment relationship with ELH. (Doc. 46-28 at 6.) An expert's bald conclusion that Chartis unreasonably denied coverage on this basis is not sufficient to make this a jury question and deny summary judgment. To the extent that an expert's opinions are merely legal conclusions, this Court can disregard it. See United States v. Scholl, 166 F.3d 964, 973 (9th Cir. 1999) (holding that a legal conclusion is an inappropriate matter for expert testimony). Additionally, expert testimony does not preclude summary judgment when it is not supported by the record. See Reynolds v. County of San Diego, 84 F.3d 1162, 1169 (9th Cir. 1996), *overruled on other grounds*, Acri v. Varian Assoc. Inc., 114 F.3d 999, 1000 (9th Cir. 1997). The Court finds that the opinions of the expert on which the Alperts rely are not supported by the record.

Further, as the Court has previously found, the correcting of prior statements is connected with and related to the making of the statements in the first instance. Thus, Chartis did not unreasonably deny coverage based on its business pursuits exclusion. Because Chartis did not unreasonably deny coverage, there is no need to discuss the second prong, the subjective test, that asks whether Chartis committed consciously unreasonable conduct in denying coverage.

Regarding claims handling, the Alperts contend that Chartis unreasonably declined

1  their invitation to participate in settlement negotiations with ELH. (Doc. 45 at 16.) The
2  Alperts' expert further opined that Chartis unreasonably did not give equal consideration to
3  the interests of the Alperts but focused on its own theory of non-coverage based on the
4  business pursuits exclusion. (Doc. 45 at 17.)

5  Chartis did not play unfairly with its insured or act in a dishonest manner. The Alperts
6  tendered the ELH Complaint to Chartis on April 7, 2011. After an initial evaluation, Chartis
7  declined to defend based on the business pursuits exclusion. (Doc. 46-30.) The Alperts
8  sought to change Chartis' conclusion on coverage by submitting additional evidence. (Doc.
9  46-3.) Chartis evaluated the additional evidence but maintained its denial of coverage
10 position. (Docs. 46-3; 46-30.) Subsequently, the Alperts settled the ELH Complaint on May
11 16, 2011. (Id.) The entire claims handling period prior to settlement lasted only 39 days, and
12 there was consistent communication between the parties. (Doc 46-3.) The Alperts' have not
13 submitted evidence that is probative on the issue that Chartis' unreasonably handled or
14 processed this claim.

15 The Court thus finds that the Alperts offer no significantly probative evidence calling
16 into question whether Chartis' investigated, evaluated, or processed their claim in an
17 unreasonable manner. Given the lack of significantly probative evidence, the Court may rule
18 on the issue as matter of law and the Court denies the Alperts' claim that Chartis exercised
19 bad faith in regards to their request for defense and indemnity.[5]

## II. The Alperts' Motion for Partial Summary Judgment

The Alperts request summary judgment on two distinct legal issues: 1) that Chartis breached its duty to defend; and 2) Chartis breached its duty to indemnify. (Doc. 47 at 2-17.) The Alperts have not presented any new arguments; rather, they rehash the same arguments that the Court has already resolved and the Court's reasoning need not be repeated. The

---

[5]As to the Alperts' counterclaim for breach of contract, the Court's grant of summary judgment to Chartis necessarily resolved the Alperts' counterclaim, finding that Chartis did not breach their insurance contract with the Alperts.

1  Court will therefore deny the Alperts' motion for partial summary judgment.

2  **III. Chartis' Motion to Strike**

3  Chartis moves to strike the declaration of an undisclosed witness, Amy Stewart. (Doc.
4  61.) The Alperts do not dispute that they failed to properly disclose Amy Stewart as a
5  witness, but claim that such failure was harmless. (Doc. 68.)

6  Under Fed. R. Civ. P. 37(c)(1), the district court has discretion whether to allow
7  testimony in appropriate circumstances, and a failure timely to disclose may be excused if
8  the failure was substantially justified or is harmless. See Yeti by Molly, Ltd. v. Deckers
9  Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).

10  Here, from the outset of the dispute, the Alperts hired Attorney Amy Stewart to handle
11  their coverage position with Chartis. (See Doc. 46-3.) The Alperts correctly note that
12  Chartis has been aware of Attorney Stewart since the inception of the dispute. (Id.) The
13  Court thus finds that the Alperts' failure to disclose Stewart as a witness was harmless, and
14  the Court will deny Chartis' motion to strike the declaration of Amy Stewart.

15  **CONCLUSION**

16  Accordingly, for the reasons set forth above,

17  **IT IS HEREBY ORDERED GRANTING** Chartis' motion for summary judgment
18  (Doc. 36.) The Clerk of Court is instructed to enter judgment in favor of Chartis and to
19  terminate this case.

20  **IT IS FURTHER ORDERED DENYING** the Alperts' motion for partial summary
21  judgment. (Doc. 47.)

22  **IT IS FURTHER ORDERED DENYING** Chartis' Motion to Strike Declaration of
23  Undisclosed Witness. (Doc. 61.)

24  DATED this 15th day of August, 2013.

25
26  Stephen M. McNamee
    Senior United States District Judge
27

28